SAM J. RECKFORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90607.   Promulgated November 14, 1939.

*Walter J. Fried, Esq.*, for the petitioner.
*Frank M. Thompson, Jr., Esq.*, for the respondent.

OPINION.

HILL: During the taxable year 1932 petitioner admittedly sustained a loss of $16,194 from the sale of shares of stock of the Texas

Gulf & Sulphur Co. which had been held by him for more than two years. The question presented is whether or not such loss was a capital loss; that is, a loss resulting from the sale of a capital asset. If the stock was not a capital asset, as defined in section 101 of the Revenue Act of 1932, the loss is subject to the limitations of section 23 (r) (1), and is allowable only to the extent of the gains from similar sales or exchanges.[1] If the stock was a capital asset, the amount of the loss is allowable in full as a deduction from gross income.

Since it is conceded that petitioner had held the shares of stock in controversy for more than two years, the question of whether or not such shares constituted a capital asset within the meaning of the statute depends upon whether or not they were held by him primarily for sale in the course of his trade or business; and this raises for decision the question of whether or not petitioner's stock market activities in 1932 constituted a trade or business.

Under the facts set out above, respondent contends that petitioner was engaged in carrying on such a trade or business during the taxable year, while petitioner, although admitting that he was a market trader in prior years, contends that in the taxable year his trading activities had been reduced to such an extent as to take him out of that classification.

No hard and fast rule of general application can be laid down as to just what constitutes a trade or business. Each case must stand on its own facts. But we can not agree, as petitioner argues, that the extent of the market activities of a taxpayer in a particular year are necessarily determinative of his classification as a trader or otherwise. The extent of the market operations may be an important factor in determining whether or not the taxpayer is merely a passive investor, but beyond that point the extent of such activities tends only to define the difference between a large and a small trade or business. In determining whether a trade or business was being carried on, a factor of more decisive importance than the volume of transactions lies in whether or not the taxpayer's market activities

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(r) LIMITATION ON STOCK LOSSES.—

(1) Losses from sales or exchanges of stocks and bonds * * * which are not capital assets (as defined in section 101), shall be allowed only to the extent of the gains from such sales or exchanges * * *

SEC. 101. CAPITAL NET GAINS AND LOSSES.

* * * * * * *

(c) DEFINITIONS.—For the purposes of this title—

* * * * * * *

(8) "Capital Assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of a taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business * * *

consisted of dealing in securities for speculative purposes, or for investment purposes.

Thus the court in *Kales* v. *Commissioner*, 101 Fed. (2d) 35, reversing 34 B. T. A. 1046, held that where the taxpayer made all decisions affecting the sale or purchase of securities and employed a bookkeeper with whom she held conferences three or four times a week, such activities were sufficient to take her out of the class of a passive investor; that she was carrying on a trade or business.

Likewise, in *Miller* v. *Commissioner*, 102 Fed. (2d) 476, it was held that a taxpayer who does no more than is usually done by a passive investor who gives reasonable attention to preserving his investments and changing them from time to time, so as to obtain a fair income therefrom, is not engaged in carrying on a trade or business.

But it has also been held that the management of investments may constitute a trade or business, so that expense incurred in that connection is deductible as business expense. *Austin D. Barney et al., Executors*, 36 B. T. A. 446.

Petitioner concedes that he was a trader in securities in years prior to the taxable year 1932. In our opinion the evidence is not sufficient to take him out of such category during the taxable year. The difference between petitioner's market activities in the taxable year and the prior years is one of degree only. During the year 1932 he had 130 market transactions, consisting of 55 purchases and 75 sales; they involved 18,250 shares of stock, having a total value of slightly less than $400,000. Petitioner was not a mere passive investor in respect of such transactions. He was not investing his surplus funds; he was engaged in speculative operations on the market, buying and selling securities in the hope of realizing gain. Questioned on this point, and particularly in reference to the shares of stock of the Texas Gulf & Sulphur Co., the sale of which gave rise to the loss in controversy, petitioner testified:

Q. Mr. Reckford, what was your main idea in trading in securities; was it for investment or was it for profit on selling, buying?

A. Well, * * * I thought I was going to be able to make a profit; over eighty-one times the past years I was able to do so. * * *

Q. There was no other stock in '32 than Texas stock which you had held for as long a period as two years?

A. There was no other stock in my speculative account.

Q. What other stock did you have * * * that length of time?

A. The stocks which belonged to me outright, and in my box, but not speculative.

In support of his contention, petitioner cites our decisions in *Clinton Gilbert, Jr., Executor*, 20 B. T. A. 765; *Francis M. Weld*, 31 B. T. A. 600; *Edward E. Trost*, 34 B. T. A. 24; and *DeWitt Page*, 34 B. T. A. 590. These cases are distinguishable on the facts, and are

not controlling here, for the reason that in each it was found that the securities involved had been purchased and held for *investment* and not primarily for sale in the course of the taxpayer's trade or business. In the *Weld* case, we said:

> We are of the opinion that a professional man, such as a lawyer or doctor, who invests his surplus income in the purchase of stocks or other property with an idea of sale at a future date at a profit is not ordinarily to be regarded as holding such shares primarily for sale in the course of his trade or business.

In the *Page* case, we stated:

> Although the petitioner had large holdings of shares of stock in many corporations, the evidence all indicates that he was not, so far as the year 1932 is concerned, an active trader in the market. He did no trading on margin in 1932. * * * He had a large estate which it was necessary for him to keep invested for income purposes. The investment of his money was not the carrying on of a trade or business within the contemplation of the statute. Cf. *Rogers* v. *United States*, 41 Fed. (2d) 65; *Taylor* v. *Commissioner*, 76 Fed. (2d) 904.

In the instant proceeding, respondent has determined in effect that petitioner during the taxable year was engaged in carrying on the trade or business of buying and selling securities on the market for profit, and that the shares of stock in controversy were held primarily for sale in the course of such trade or business. The evidence presented is not sufficient, in our opinion, to justify us in disturbing respondent's determination.

*Decision will be entered for the respondent.*